IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Toni C. Bowen, | Civil Action No. 8:09-2694-MBS-BHH |
| Plaintiff, | |
| vs. | |
| Michael J. Astrue, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Toni C. Bowen, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 36 years old on the alleged onset date of November 8, 2006.[2] (R. at 157, 174.) She has a high school education and has completed two years of college. (R. at 186.) She has past work as a graphic artist. (R. at 175.) She alleges she became disabled due to back and leg problems, difficulty walking, and inability to straighten her hands, weakness, imbalance and chronic pain. (R. at 174.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] Plaintiff stated in a questionnaire that her medical conditions first interfered with her ability to work in 2003, but she continued working. (R. at 174, 291.)

The plaintiff protectively filed her current applications for SSI and DIB on November 27, 2006. (R. at 125-32.)[3] Her applications were denied in initial determinations and upon reconsideration. (R. at 61-75, 81-86.) A *de novo* hearing was held on March 6, 2009. (R. at 22-56.) On April 28, 2009, in an unfavorable decision, the ALJ found that plaintiff was not disabled within the meaning of the act. (R. at 10-21.) As the Appeals Council denied the plaintiff's request for review (R. at 1-5), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> (2) The claimant has not engaged in substantial gainful activity since November 8, 2006, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> (3) The claimant has the following severe impairment: fibromyalgia (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925, and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). I specifically find that she can lift or carry 20 pounds occasionally and 10 pounds frequently, and she can sit, stand or walk for six hours, each, of an eight hour work day. I also find that she can never climb a ladder, rope, or scaffold, but she can occasionally balance, stoop, kneel, crouch, crawl, and climb a ramp or stairs. I also find that she needs to avoid even moderate exposure to workplace hazards such as moving machinery and unprotected heights.

---

[3] The plaintiff previously protectively filed for SSI and DIB on August 23, 2006. (R. at 114-24, *see also* 57-60.) It appears her prior and current claims were consolidated for purposes of the ALJ's decision.

2

(6) The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

(7) The claimant was born on March 22, 1970 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404-1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404-1569, 404.1569a, 416.969 and 416.969a).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the

Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ's decision is not supported by substantial evidence and that the ALJ erred in (1) failing to find certain impairments severe and (2) failing to perform a proper residual functional capacity (RFC) analysis. Within each allegation of error, the plaintiff makes more specific objections which the Court will address in turn.

**I. Severe Impairments**

The plaintiff first complains that the ALJ failed to consider various impairments of the plaintiff and to find them severe. To establish a severe impairment, a claimant must provide medical evidence that her impairments significantly limit her ability to perform "basic work activities." *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 146 n.5 (1987) ("An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"; it is Plaintiff's burden to show she has a severe impairment); 20 C.F.R § 404.1520(c). Social Security Ruling 96-3p states that the Commissioner will consider a

5

claimant's impairment "severe" if it significantly limits his physical or mental abilities to perform basic work activities. SSR 96-3p.

The plaintiff's burden to show a severe impairment is not an exacting one, however. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). In short, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd Cir. 2004).

The plaintiff spends a significant amount of energy explaining fibromyalgia. (Pl. Brief at 22-29.) This is to a strange effect, since the ALJ expressly found the plaintiff's fibromyalgia severe. (R. at 12, 17.) Moreover, the plaintiff exhaustively describes fibromyalia as its generally found and expends much less energy arguing how it specifically manifests with the plaintiff. (See Pl. Brief at 22-29 (without any citation to the medical record).) Regardless, there can be no error in the ALJ's severity analysis concerning fibromyalgia; he found it severe. *See id.*

The plaintiff, however, goes further to accuse the ALJ of not understanding fibromyalgia. This is a common criticism – that an ALJ or society at large or even segments of the medical community do not respect its viability. The Court infers no such view from the decision. The ALJ does not dismiss the plaintiff's fibromyalgia as unverifiable. To the contrary, and as stated, he finds it severe. Rather, the ALJ was compelled by what he described as an "extensive amount of testing" nearly all of which implied normal functioning. (R. at 13.) In other words, he does not dispute the credibility of the impairments presence

6

but simply the degree of its effect on the plaintiff's ability to function. The ALJ cites record after record in support. The following is a partial summary:

- Examination shows . . . normal alignment. She does not signficantly pronate. . . . certainly no instability to testing anterior, posterior, or minimal . . . full active and passive range of motion . . . full rantge of motion of the hips and ankles (R. at 13);

- Under "motor exam," it was noted that the claimant gave poor effort on extremity strength testing, *id*. at 14;

- Based on our extensive negative workup and Dr. Morgenlander's opinion that his is functional or psychosomatic I think she needs to be referred to a clinical psychologist, *id*.;

- A vestibular/balance evaluation was found to be normal, *id*. at 15;

- Pretty good strength, sensation and reflexes in upper and lower extremities, *id*.

The ALJ cited significantly more evidence of perfectly normal testing. (See R. at 12-16.) The Court has simply highlighted some portions of the relied upon evidence that go to actual functional limitations. Even this brief survey constitutes substantial evidence to conclude that, while the plaintiff's fibromyalgia was severe as a matter of law, it did not produce limitations beyond that concluded by the ALJ. The fact that the plaintiff has recited other evidence of record suggesting some functional limitation (R. at 384-86, 413-14, 455-58, 790-91) is of no moment. *See Blalock*, 483 F.2d at 775. The ALJ was exhaustive in his treatment of the plaintiff's fibromyalgia and cited substantial evidence to conclude that, while severe, it was not disablingly so. (R. at 12-17.)

The plaintiff further contends that the ALJ failed to find other impairments, including knee problems, degenerative disc disease, impaired ambulation, hand problems, and vocal cord dysfunction, severe. It is true that the ALJ did not find any of these alleged impairments severe. The defendant argues that the record is unclear as to whether or not these other symptoms were actually caused by her fibromyalgia or were independent impairments. To this end, the defendant emphasizes the ALJ's observation that Dr. Steve

7

Hamberis, the physician most partial to the plaintiff's case, cited fibromyalgia as the exclusive source of the plaintiff's work limitations, as of February 2009. (R. at 16, 800.)

Ultimately, however, the Court is constrained to agree with the defendant that any error in his consideration of these other impairments at Step 2 is harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). As the defendant contends, the ALJ was obligated to consider all of the plaintiff's impairments even after finding it non-severe. *See* 20 C.F.R. §§ 404.1545(a)(2), 404.1545(e). The ALJ acknowledges as much. (R. at 11 (citing 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545; SSR 96-8p).) As such, any purported error in not identifying particular impairments as severe at step two is ultimately harmless as long as the ALJ considers the effects of all impairments when assessing the claimant's residual functional capacity. *See, e.g., Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's step two error was harmless in light of his discussion of the impairment when assessing the residual functional capacity). And, in fact, the ALJ did revisit the plaintiff's other impairments in his residual functional capacity analysis. (R. at 18.) The ALJ explicitly indicated that he had considered "all symptoms" (R. at 18); her spinal condition, *id*. (lumbar MRI results)); her hand problems, *id*. (the plaintiff's testimony about tremors and contractures)); and her gait and voice, *id*. (testimony about difficulty walking and balancing), *id*. at 19 (Dr. Hamberis' treatment notes with normal gait and voice findings).

As stated, the ALJ was emphatic that he could not find serious evidence of funtional limitation in all of the evidence. The decision is thorough in this respect. So, whatever problems in characterization the ALJ committed at Step 2, it has not prejudiced the plaintiff, insofar as the ALJ considered the entirety of her condition going forward.

8

## II. Residual Functional Capacity

The plaintiff also complains that the ALJ did not perform a detailed residual functional capacity analysis. Specifically, the plaintiff suggests that the "ALJ appears to be unfamiliar with fibromyalgia syndrome" and contends that he "failed to even discuss the fibromyalgia syndrome much less discuss any potential physical or mental impairments resulting from the fibromyalgia." (Pl. Brief at 34.) The Court has already addressed this type of accusation. The Court simply does not agree that the ALJ was ignorant of the disorder. But, apparently the plaintiff would have preferred the ALJ to have, in *dicta*, independently opined about the nature of the disorder to prove his *bona fides* to consider it. The ALJ is not the medical expert, however. His job is to weigh the opinions of those who are expert. "An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). As a lay person, an ALJ is "simply not qualified to interpret raw medical data **in functional terms** . . . ." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (emphasis added); *see also Manso-Pizarro v. Sec'y of Health & Human Services*, 76 F.3d 15, 17 (1st Cir.1996) (stating that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record"); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("Because an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony."). In other words, the plaintiff would have the ALJ improperly express some personal acquaintance or empathy with the disorder. But, appropriately, it was not some latent bias that led the ALJ to his conclusion, but rather a complete lack of evidence that the fibromyalgia resulted in the degree of functional limitation alleged by the plaintiff. The ALJ cited countless expert opinions to this effect. (R. at 12-16.) The plaintiff has pointed the finger at the wrong source. The ALJ simply adopted, as was his task, what numerous others, more qualified than he, had concluded. It is not persuasive to characterize the ALJ as uninformed simply because the plaintiff disagrees with the outcome. The ALJ can be

knowledgeable of the difficult effects of fibromyalgia and yet not find, based on the evidence, that a plaintiff's specific condition is disabling. The two are not mutually exclusive.

In regards to the ALJ's conclusion that the plaintiff could perform light work, the plaintiff further complains that he ignored the evidence related to her multiple other injuries and impairments and specifically the opinion of her treating physician, Dr. Hamberis. The Court has largely addressed the matter but out of an abundance of caution would make the following additional observations.

As stated, the plaintiff certainly has produced contrary evidence that she has other physical difficulties which have produced some functional limitation. As to her knee pain and instability, she has reported that her right knee felt weak when she walked and that she stumbles into walls, (R. at 277-278); that she was having falling episodes (R. at 435); and that on many occasions she sustained injuries (R. 417-418). Dr. Ben Millar noted atrophy of the distal most vastus medialis muscles of the thigh and found her to have a wide based unstable antalgic gait. (R. at 384-386.) There are also numerous notations that the plaintiff used a cane for stability. (R. at 598-599, 619, 741-742, 727.)

The plaintiff has also produced evidence of functional limitations related to her hand impairment:

> Pt with internal rotation of right shoulder accompanied by scapular depression due to decreased musculature of right shoulder complex. Pt with mild to moderate tremor with repetition of functional activity engaging, muscles of the shoulder complex, upper arm, lower arm, wrist and hand due to quick muscle fatigue. Pt wearing right knee brace for stabilization and prevention of hyperextension due to poor muscle control of quadriceps and hamstrings.

(R. at 456.)

> Both intrinsic and extrinsic hand muscles are unable to tolerate sustained contraction yielding hyperextension of DIP joints and stiffening/tightening/fatigue of hand.

(R. at 457.)

Concerning her degenerative disc disease, an MRI indicated that she had a fracture of L3. A subsequent MRI performed in November of 2007 revealed a small paracentral disc protrusion with mild compression of the thecal sac, and degenerative disc disease. (R. at 785). She underwent facet joint injections in an attempt to relieve the back, buttock and leg pain. *Id.*

As discussed, however, the ALJ took pains to note that most objective test results had been normal. (R. at 12-16 18.) Her brain MRIs were normal. (R. at 236, 263, 264, 266, 303, 730, 743.) Various other diagnostic tests were also normal (see, e.g., R. at 264 (normal lumbar puncture), 304 (normal right foot MRI), R. at 378 (unremarkable EMG and nerve conduction studies), R. at 384, 598 (unremarkable MRIs of brain and spinal cord, normal spinal fluid, negative blood testing). The ALJ commented that the August 2007 Mayo Clinic testing was "some of the most extensive and comprehensive diagnostic testing" that he had seen in a disability case, "which revealed that she is quite healthy." (R. at 18, 663-717.) A review of those records suggests that various physicians found the chronic pain and fibromyalgia alleged, but largely normal functional abilities. (See, e.g., 670.)

The ALJ also considered inconsistencies between the plaintiff's claims of pain and functional loss and her activities of daily living. The plaintiff has not contested the ALJ's credibility determination.

Finally, the ALJ dealt directly with the only opinion in the record that suggested that the plaintiff was unable to perform even sedentary work. Dr. Hamberis felt as though the plaintiff's pain would distract and impair her ability to work. (R. at 799.) The ALJ, however, provided sufficient reasons for assigning less than controlling weight to that opinion. (R. at 19.) As always, the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s),

11

including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. A treating physician's opinion may be assigned little or no weight if it is conclusory. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996).

Here, the ALJ observed that Dr. Hamberis' opinion conflicted with his own treatment records indicating that the plaintiff had good strength, sensation, and reflexes and a normal gait. (R. at 19.) He also reiterated that Dr. Hamberis' disability opinion conflicted with other substantial evidence of record. As repeatedly addressed, regardless of the varying diagnoses, clinical examinations typically revealed that the plaintiff was in no acute distress and was fully alert and oriented, and that she had 4/5 to 5/5 motor strength and unremarkable range of motion, gait, station, coordination, and sensation despite her allegedly disabling pain and other symptoms. (R. at 235, 260-61, 264, 292-93, 310-11, 337, 344, 349, 363, 385-86, 554, 659, 673, 757.)

The plaintiff has not strenuously objected to the ALJ's consideration of Dr. Hamberis' opinion, other than to simply contend that he did not address it or other allegedly significant evidence of impairment. For all these reasons, it cannot be said that in performing the RFC analysis that the ALJ failed to consider evidence of all the plaintiff's impairments, as she alleges. An ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations omitted). Moreover, although not to the degree preferred, the

12

limitation to light work necessarily accommodates all manner of functional limitation in keeping with both the plaintiff's complaints of pain and other impairments related to her hands, knee, and back. The RFC expressly limited her to lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing or walking for only six hours, of an eight hour work day; never climbing a ladder, rope, or scaffold; and only occasionally balancing, stooping, kneeling, crouching, crawling, and climbing a ramp or stairs. (R. at 17.) Such limitations reflect specific attention to difficulties the plaintiff has in functional terms.

These are difficult cases for the undersigned. Nothing herein should be taken as the Court's doubting the plaintiff's subjective allegations. The Court has no idea what the plaintiff suffers. And, therein, lies the problem. The undersigned is limited to a review of the *way* in which the ALJ considered the evidence of record and the reasons and evidence recited. The Court, in this case, finds the administrative review largely without fault. The conflict of evidence was for the ALJ to resolve. And, the fact that the plaintiff has identified evidence which might have led another ALJ or even this Court to reach a different conclusion, is immaterial; the decision rendered was based on substantial evidence.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED

s/Bruce Howe Hendricks  
BRUCE HOWE HENDRICKS  
United States Magistrate Judge

December 28, 2010  
Greenville, South Carolina